Case No. 17-5068, K. Wendell Lewis, et al. v. Pension Benefit Guarantee Corporation Appellant. Mr. Kinkney for the appellant, Mr. Shelley for the appellate. Mr. Kinkney for the appellant, Mr. Shelley for the appellant.  Good morning. Good morning. Your Honor, I'm here to police the court. My name is Charles Finke. I'm Deputy General Counsel with Pension Benefit Guarantee Corporation, or PBGC. I'd like to reserve three minutes for rebuttal. This case is before the court on interlocutory appeal. Why is that? Why should we be looking at this case now? Your Honor, because the district court recognized that it had issued a decision that was unprecedented in this circuit or anywhere in holding that PBGC could be liable for benefits in excess of the statutory benefits, and I think also realized that that happens all the time. District courts make decisions on cases of first impression. Yes, Your Honor, but I think here, given the procedural posture of the case, two things. First of all, the rest of the case that is a more traditional benefit determination decision is proceeding in the district court. If the fiduciary breach aspect would have continued in the district court, and if PBGC would have prevailed on the merits of a fiduciary breach case, we would have had the district court's decision and had no basis or no ability on appeal to have that decision reviewed. Why? I mean, typically, if there's a decision that makes a difference, you can bring it up after final judgment. His hypothetical is that it doesn't make a difference because the corporation wins on the merits. We will be found to not have committed a fiduciary breach, and so on appeal, the issue won't be available to say that it was inappropriate in the first place. I thought the principle, the idea behind the interlocutory appeal was that if you were correct in your reading of the law, an enormous litigation involving all kinds of factual detail, and I'm sure legal arguments as well, could be averted. That's the second point, Your Honor, yes, that the case currently is on the administrative record on benefit determination. The fiduciary breach case would involve probably a great deal of discovery, additional motion practice, and a trial, which can be averted on appeal if PBGC were to prevail. As I indicated, the district court's decision is unprecedented in that it subjects PBGC to the potential of participant recoveries in excess of their statutory benefit. Can you help me with what, to my eye, is a very strange wording of section 1344C? The last sentence and the preceding sentence just seem to me to say two different things, and I'm sure there's some context there that I'm missing. I think, Your Honor, that you've correctly observed that the first sentence is fairly difficult to parse about what it means. In this case, where it talks about an increase or decrease on the later of the date a trustee is appointed under section 1342B, or the date on which the plan is terminated, is to be allocated between the corporation in a manner determined by the court. Here, that sentence doesn't, whatever it means, it doesn't apply because there was no trustee appointed under 1342B. Although 1342B, doesn't the very last part of it refer to corporation trustees? Corporation can step in and be the trustee. So that wasn't entirely, didn't seem entirely dispositive to me that that didn't apply. So 1342B is a trustee before plan termination. As it turns out in PBGC's history, that part of the statute has not had use. There hasn't, as it turned out, PBGC has become trustee of plans after plan termination or contemporaneous with the plan termination. And so 1342B has had very little effect. Similarly, there was no court appointed trustee here. The plan sponsor in PBGC agreed to PBGC's appointment as trustee. So none of the triggering events of the first sentence happened here. I'm sorry, what about subsection 2 there, or the second trigger? The date on which the plan is permitted is to be allocated. Well, it's... It's again... It's your law says... As determined by the court. ...getting on the later of and then... Right. And I think one of the difficulties in understanding that is that if one ever were to happen, that is, number one, if it were to ever happen, it would have to happen before number two. So again, it is... Okay, but what about two? That's what I'm... Well, here there... It says in a manner determined by the court. Here there was, in the case of a court appointed trustee, here there was no court appointed trustee. So then you would go to, or as agreed upon by the corporation and the plan administrator. And here there was no agreement between the corporation and the plan administrator. I see, I see, okay. So none of those things... Court appointed and agreement otherwise, and you have no agreement. Right, so none of those things happened. And so you go to the clear language of the second sentence, which says, any increase or decrease in the value of assets of a plan occurring after the date on which the plan is terminated shall be credited to or suffered by the corporation. So you acknowledge that this first sentence is hard to parse. And something in your recent answer suggested that you think maybe there was actually an error in the way that it was written, and that seemed to be the position you took in your brief, that it was dealing with the potential period between when a trustee is appointed and the plan is terminated? It appears to be anticipating, again, in 1974, Congress didn't know whether there would or wouldn't be 1342B trustees. There haven't been. But it appears to be addressing the concept of if there was a pre-termination trustee, how assets would be allocated in that event. That's what it seems to be pointing to. Basically the idea is to have some accountability during that period. I think so. But it's not actually written that way. But you're just saying that's not our problem because it also is written at least in a way that doesn't apply here. Exactly. And the clarity of the second sentence does apply here, which there was a plan termination date. PBGC valued the assets as of that date. And so all gains and losses since that date in 2006 are credited to or suffered by the corporation. So the parties in the appeal really present two very dramatically different views of PBGC and the Title IV insurance system. The plaintiffs argue and close their brief with the assertion that Section 1303F in Title IV is an at-large fiduciary breach remedy sort of unmoored to the rest of Title IV, authorizing the disgorgement of PBGC investment returns when a benefit claim is accompanied by another claim alleging procedural violations. PBGC, on the other hand, maintains that the law is cleared in the context of fine benefit plans. Individual participants have an interest in their plan benefit while that plan is ongoing, whether there's allegations of fiduciary breach or not. Isn't there a more fundamental distinction? And I'm not arguing that there is, but I'm asking you to help me understand. I mean, the pilots seem to be suing the corporation for fiduciary breach in its capacity as a trustee. You seem to be arguing that the corporation has been acting in its capacity as a guarantor. And those might lead to very different responsibilities of the corporation. Am I right? Yes, Your Honor. I mean, certainly the pilots are asserting that through this whole process we've been acting as the trustee. Our view is, and again, Title IV in 1342, Section D, talking about that trustee, says that the statutory trustee can be a Title I fiduciary to the extent that it's not inconsistent with Title IV. It doesn't say clearly when PBGC is acting as trustee and when it's acting as guarantor. Certainly in the stage of the- Whichever way it's acting, it's governed by 1344C, right? Yes, 1344C talks about the corporation. It doesn't talk about the trustee. It is talking about gains or losses being suffered by the corporation, not by the statutory trustee. Is your argument that the corporation is acting as a guarantor and therefore claims for breach of fiduciary duty don't apply? Most of that argument would happen if the case were to go to trial because I think there's assertions that the plaintiff made that we were doing certain things as a trustee that we don't agree with. But our motion to dismiss is on the more basic reasons that the fiduciary breach claims- That's something that would need to be developed factually if it proceeded. You're saying that in this instance, you're acting as a trustee. In this instance, you're acting as a guarantor. Out of this instance, there was a fiduciary responsibility. Out of this, there's not. That's something that would need to be developed factually. Is that- Yes, Your Honor. That's not the main point of this. Is the main point on the fiduciary, the potentially permissible claims against the fiduciary, is that a Title IV claim of fiduciary breach can only proceed as fiduciary is defined in Title I, in other words, on behalf of the plan? That's one of the four questions, Your Honor, yes, is whether individual relief is appropriate because- And the plan-wide relief is clear in Title I, that an individual can only get plan-wide relief if they're arguing fiduciary breach. And then Title IV is written a little bit differently, but you have a theory that re-invokes that Title I limitation for purposes of a Title IV fiduciary breach claim. And I'm just trying to remind myself what that- Essentially, the district court and the plaintiff's idea is that the Title IV provision is actually broader than Title I. I get that. But, in fact, the only reason that you could sue PBGC as a fiduciary is because Title IV says in 1342 that in limited circumstances, the statutory trustee can be a Title I fiduciary. So implicit in that is you're only as liable- The most sort of the high watermark for liability for PBGC would be Title I, is our view. So, yes, the whole- Thanks, that's helpful. The whole plan-wide. It seems like if we were to take up the merits of these issues on this interlocutory frame, we would not need to answer all of the questions. And I wonder if you have any suggestions. I mean, one of the things that strikes me is we don't ordinarily decide issues on an interlocutory basis. And some of my response tentatively to some of these questions is, well, it depends. You know, on the nature of the claim. It depends on the context. So I'm interested in where the firmest ground is that does the work, in your view. And I'm interested in that from the- Your Honor, I think the two points, the two questions, the one that deals with a little bit of what I've been talking about, that Title IV says PBGC, you can only- participants are only entitled to their statutory benefits. And under Sections 1322, 1344, and 1361, it's clear that's all that PBGC is permitted to pay. That argument, the fact that other equitable relief under Title IV, here there's- it still has to be addressing something that they are adversely affected by. That's what 1303F says. Here the only adverse effect that they're arguing is the benefit determinations, the loss of benefits, whether it's by fiduciary breach or a more general argument. The related point is the 1344 point that gains or losses or PBGCs and disgorgement is prohibited. I would especially, again, on interlocutory appeal, the question in Title I about when a claim for benefits can be accompanied by a claim under 1132A3 for other equitable relief is one that the circuit courts are all over. They cite the 8th and 9th Circuit that they think support them. We cite the 4th, 6th, and 7th, and every district court in this circuit as supportive of our position. And I think you probably don't need to reach that one. Probably don't. Don't, right, that you can rely on. I mean, it seems like if we reach the 1344C issue, for example, we wouldn't need to reach anything else in the context of this case. But that wasn't the first thing out of your mouth when I said, what do you think is the firmest and clearest ground? I think the two arguments are related. The fact that the sections that say what we can pay limit us to the Title IV benefits. That combined with 1344C that says and investment assets are PBGCs. Flip sides of the same coin as you see it. Good morning, and may it please the Court. I'm Anthony Shelley here on behalf of the appellees who I will refer to as the pilots. I'd like to begin with Judge Pillard's question about 1344C that she began with and then turn to the trustee role that Judge Griffith mentioned and then also get to what may be the paramount issue from our perspective. So first of all, in Section 1344C, Your Honor, the 2nd Circuit has noticed exactly what you did, that the first sentence and the second sentence are contradictory and don't seem to make sense and there's a case on this KINEC, K-I-N-E-K, versus paramount communication 22F3rd 503. And the important pages are 515, 516. And I did let Mr. Finke know I might mention that case. But in this case, if you parse the language, Mr. Finke said that the PBGC was not appointed a trustee, so the first sentence doesn't matter. And that's, in our view, false. The PBGC … It's under 1342B. Well, they were appointed … If you look to 1342B3, it says, The corporation … This is on page 115 of the statutory addendum. The corporation and the plan administrator may agree to the appointment of the trustee without proceeding in accordance with the requirements of 1 or 2 above. That's what happened here. They had an agreement with the plan administrator that they would be appointed the trustee. And, in fact, on page 2 of their opening brief, they note what goes on in these cases. Plans are terminated, a trustee is appointed, they say, and invariably the PBGC becomes the trustee. So there was the appointment of a trustee. And importantly, from the perspective of the first sentence of 1344C … Wait, wait, wait. Go back to that because I was poring over that, and I read it the way that Mr. Finke read it. So if we go to, again, page 115 of the statutory addendum, section 1342B3, so towards the middle of the page. The corporation … May agree to appointment of a trustee without proceeding in accordance with the requirements of 1 and 2. So what happened here was the agreement was as to the appointment. So there is an appointment here by agreement. And, in fact, the first sentence then of 1344C also talks about two types of appointment. In the parenthetical, it says, if it's a court-appointed trustee. Here, the court didn't appoint it. It was appointed by agreement. So the second part comes into play, which is that … As agreed upon by the corporation and the plan administrator in any other case. But the other important point here is that the plan was terminated in September of 2006, and the trustee, they were appointed in December of 2006. So the later of the dates here is their appointment. And so the first sentence, if this wants to be parsed literally, the first sentence is the one that governs because the second sentence governed for three months, from September of 2006 to December of 2006. Then the first sentence kicked in because the later of the two dates was the appointment of the trustee, making the first sentence the trigger. And the only part of that first sentence then that becomes relevant since they weren't a court-appointed trustee is the last part where they had to have an agreement. And there was none. We'll concede that. But the point of all of it is it's an irrelevancy. 1344C becomes an irrelevancy. And to negate Section 1303. It becomes relevant to a cause. Because there's no agreement. No, there's no agreement. The last sentence is the default position, right? Except that the first sentence governs on the later of those two dates. And the later date is not the termination. The later date is the appointment of the trustee in this situation, meaning that the only thing that could trump 1303F, the equity provision, would have to come out of the first sentence. So you're saying that you take the difference between the result under the first sentence, which is a period from the appointment of the trustee. The termination. The termination first, the trustee second. You take it from September 2006 to 2009. September to December. So you're just saying that's the only period you're concerned with. The second sentence. But the Second Circuit sort of addressed this in a case saying, we can't make heads or tails of this, and so it has to be interpreted narrowly. And we're not going to use it to override a district court's discretion in issuing remedies under ERISA. Because 1344 probably has a drafting error. And, Judge Pillard, I think you mentioned that. The drafting error is probably in the first line, where the word, any increase or decrease in the value of the assets of a single employer plan occurring during the period beginning on, the later is probably ending. It's probably the word is supposed to be ending. If we want to read it the way the PBGC sort of has administered it. But it doesn't say that. So it creates some conundrums. But the point, again, from our perspective is that it should be narrowly read, not to trump rights. I'm not sure what narrowness means in this context. Cautiously, maybe. Well, but I don't know that it is cautious to say that it is a good idea to have the fate of the assets after bankruptcy determine what the pensioners are entitled to. Either that or what must come out of the funds accumulated by the corporation for the benefit of pensioners who are otherwise going to get nothing or much less than entitlement. Our position is that 1344C is an accounting measure. It uses the word in the last sentence, for instance, that the PBGC will be credited with gains. That's an accounting term. The dictionary definition is actually to put it on the credit side of an account. Here, we don't challenge any of that. Our only allegation is that wrongdoing occurred during the process of administering the plan, and if the PBGC gained as a result of it, we're entitled to that money under old equity. This provision as an accounting measure, moving money during a period of time, shouldn't trump this. Much of your argument about what you would derive from the preservation of normal trustee liabilities doesn't seem to address the question of what does the trust instrument say. Suppose someone creates a trust with A as the life beneficiary, but not to get income, to get simply $100,000 a year, whatever the income may be, and whatever is left over to the remainder money. Would that life tenant be able to sue the trustee because the trustee was running it so well that there was a huge income, way in excess of the specified $100,000? Not if the trustee didn't do anything wrong. In a case where, in paying out the $100,000, let's say the trustee was late in paying out the $100,000, and did so because they wanted to gain enormous amounts of investment returns on it. They then gave the $100,000. The question is, does the trustee in that situation... I can see how, under that trust, the beneficiary would be entitled to any money that it lost through the delay in the payment of funds, but I don't see how it would... That's all we seek in Claim 1. Yeah, but it sounds to me as if you have a very broad notion of the causal connection. If there's some delay, and that can be causally connected to the investment of the assets doing extremely well, then you get the benefit of that. That doesn't seem to me to follow at all. That seems to completely disrupt what the set lore, in my hypothetical, has created. Well, we have concrete harms here. For instance, two we identified, two financial harms. In just Claim 1, even if on all the benefit claims we're successful, we still have concrete financial harms. One is, for instance, and we noted this in our brief, the PBGC paid estimated benefits at the start of the period, in 2006, that were lower than the final benefit determination. So for six years, they paid less money. They gave minimal... Okay, but wouldn't interest solve that problem? It doesn't solve it because the interest was at 1 or 2 percent, whereas the PBGC was gaining 9 or 10 percent in asset returns. The interest was at 1 or 2 percent because what? Because that was their statutory interest rate that they, by regulation, decided to pay. That sounds like something the set lore arranged. But equity wouldn't countenance that. Old equity would insist that if the trustee gained as a result of having money that they shouldn't have had for the period they had... The trustee doesn't gain in this, certainly in my hypothetical, and I don't think the gain of the corporation is really for the benefit of other pensioners. So, I mean, it's a strange view you're taking of the matter. No, our plan is... They're not here, the government, in the sense of the government corporation. They're here as a trustee, which gets maybe to Judge Griffith's earlier question. They took on this role, and if it was a private situation, that money would be in a corpus. It would be in a bank. It would be gaining money, and if the trustee... Or it would be losing money. Or it would be losing money. I mean, that's the sort of backdrop if we look at the scheme as a whole. And if we're going to have this guarantee, part of what makes it work is they say, wow, you know, retirees are in this tough place depending on when their plan fails. What if it's a stock market crash? We're going to take on insuring against that little sub-piece as well as being an overall insurer by just having a predetermined interest guarantee and will suffer the losses or take the investment benefits during that period of time. It seems like that's not an unreasonable approach for Congress to have taken, and if, in fact, that's the approach that 1344C expresses. Well, Congress didn't take that approach. They set up two different functions under ERISA. The guarantee, insurance FDIC-like guarantee that the PBGC plays, but they also set up a trustee role, and it's not necessarily the PBGC that should be paying it. Well, the question then is what is the statutory field on which the trustee is operating, and that's why we started with 1344C to figure out if 1344C just says, you know, whatever happens with the investment value with the delta that's going to go into the fund and predetermined interest is going to stand in, then there's no fiduciary issue there, is there? Well, there's a fiduciary issue if they – yes, there is, because as a trustee, if they breach their fiduciary duty, the real provision that matters is 1303F first. But I'm just saying that if we were to read 1344C the way that the PBGC would have us read it, it takes it off the table in terms of fiduciary duty. Well, it takes off-the-table disgorgement as a remedy if you read it the way they do. There are other remedies for breaches of fiduciary duty such as – But they wouldn't be breaching their fiduciary duty vis-à-vis that money because that money is statutorily put elsewhere. By keeping it. It's put elsewhere. If the court were to read 1344 that way, I would – then the money would be off-limits to us. But it's the wrong way to read 1344C. And it also would hamper the PBGC because think about it. It says that the PBGC gets credited with or suffers the losses. Well, if the PBGC illicitly suffers a loss, it can't sue anybody, supposedly, to get that money back. And that's what they tried to do in Kinnick. And the court said, yes, you can sue because you suffered a loss when someone else was responsible. And we would say, just like they could sue somebody if they suffered a loss illicitly, we can sue to get the gain back when they gained it illicitly. And that's what Judge Walton said. He said it can't mean that they get a credit or have to suffer a loss no matter what. Doesn't your reference to old equity – it doesn't get you as far as you want to go because we're not in old equity here. The corporation has this very distinct role. They have to be looking out for the assets of others as well, right? That's the way in which they're a very different type of trustee than you would be thinking of when you're talking about old equity. They have to be watching out for funds for others, not just for the pilots, right? Not when they're a trustee. When they're a trustee, they're looking out for our benefit. If Congress could have said the PBGC shall be the trustee, it wouldn't say that. It said all of this has to be done by a plan administrator who's a trustee and then said the PBGC or anyone else who's qualified could be the trustee. So Congress didn't qualify anything, and actually old equity is paramount because that's the way the Supreme Court has said in Cigna v. Amara, for instance, that appropriate equitable relief has to be interpreted. But they weren't talking about what you're seeking here, which is disgorgement. They were. They were talking about disgorgement from a fiduciary. The PBGC wasn't the party there, but it was disgorgement. What's the statute governing the fiduciary? Fiduciary obligations. So their obligations are governed by 1342 where it says the trustee shall have all the obligations of a bankruptcy trustee or an ordinary oversubstitution. Its obligations are also governed by 1344C, right? If there's a conflict, and I don't see any conflict here between our allegations of they engaged in mismanagement and other behavior that cost our clients significant amounts of retirement money and fiduciary obligations, in fact, their core fiduciary obligations. I'd like to finish just by going to Judge Pillard's point of what, if you deem this to be an interlocked curriculum that's worthy of hearing, which question really needs to be answered, and it's just the first one. If the first question is really can the PBGC be sued at the pleading stage for fiduciary breach in addition to what they call benefits claims? And the answer to that is yes under every circuit, at the pleading stage at least, under every circuit's recent statements. Suppose we agree with you on that. Why is that the complete answer? Because then it becomes depends, as Judge Pillard said. Whether we win depends on our actual harm, how much mismanagement there was. It really becomes a lot of factual questions. It also depends on the application of 1344C. As to the disgorgement question, as opposed to other issues associated with having to breach the... I think you say quite firmly in your brief that the specific things you point to in Claim 1 that duplicate other claims are problems because they lead to this gain for the corporation, essentially at the expense of the pilots. I tried to describe other financial harms between the estimated and final benefits, which have nothing to do with those other things. In addition, one other thing that's mentioned in the first claim is, for instance, that they whipsawed many of the pilots by giving them incomplete information so they couldn't appeal in a timely way, and then said you're untimely. That has nothing to do with the amount of benefits at issue in 2 through 5, but is really a fiduciary procedural error that can only be corrected in this manner. So I think, as I mentioned, on Question 1, whether fiduciary breach claims can be brought in addition to all the circuits agree at the pleading stage, yes. And the Eighth Circuit in the Jones case we filed last week very recently said, and certainly in this exact factual circumstance, if the PBGC weren't a party, you could go all the way and seek even the same relief as you sought on the benefits claims and the fiduciary claims. So with that, we'd ask you to affirm, Judge Walton. Thank you very much. Your Honor, there's a couple of quick points. First of all, counsel's reference to 1342B3, where you agreed to appointment of a trustee again, that's to the appointment of a pre-termination trustee. That didn't happen here. If you then look at 4042C. How do we know that? Because there was no trustee prior to the termination of the plan. And if you look at the language in 1342C, there it says if the corporation and the plan administrator agree that a plan should be terminated and agree to the appointment of a trustee without proceeding in court, then it's accomplished. So there's two similar provisions, one for the pre-termination trustee and one for the termination trustee. Why do you say that's a pre-termination trustee? He was saying that applies here where you have termination and then the appointment of a trustee. Because if you look at the appointment of trustee B, if you look at B1, it's talking about appointing a trustee to consider termination. And if you look at C, it's talking about the actual termination. And so PBGC is, and if you read the trustee agreement between Delta and PBGC, it will recite 1342C. So that, again, there wasn't a trustee appointed under 1342B. So, yes, the pilots now raise this 23-year-old Kinnick case that they didn't raise in their brief by 28J letter. And I would just point out a couple of things about Kinnick. First of all, it was addressing what happens in the pre-termination period, not in the post-termination period. And second, it addressed what recoveries PBGC could get from someone, not what participants could get from PBGC. So in terms of what we have to decide, given the pilots' claims that the losses from the claimed fiduciary breaches extend beyond, they would not be fully remedied by disgorgement. So I take that to be their position. Then we also have to decide the question about the scope of potential fiduciary claims and or individual versus plan as plaintiff for purposes of a fiduciary claim. You could reach the individual versus plan relief issue. I think, Your Honor, that if you look at the fact that the process, the asserted process violations, the process complaints, are about the benefit determination process. That is complete. They have their benefits. So if there isn't under 1344C and under 1322 and 1361, if there is no disgorgement, then the only other relief is the asserted correct benefit amount that they're entitled to. They've already got that claim in counts two through six. So at that point, the fiduciary breach assertion does become duplicative because it is asking to remedy the same injury exactly. Thank you. Thank you very much. Case is submitted.
judges: Griffith, Pillard, Williams